# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TECHNO VIEW IP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OCULUS VR, LLC and ) <br> FACEBOOK, INC., ) <br> ) <br> Defendants. ) | Civil Action No. 17-386-VAC-CJB |

## REPORT AND RECOMMENDATION

In this action filed by Plaintiff Techno View IP, Inc. ("Plaintiff") against Oculus VR, LLC and Facebook, Inc. (collectively, "Defendants"), Plaintiff alleges infringement of United States Patent Nos. 7,666,096 (the "'096 patent") and 8,206,218 (the "'218 patent"). Presently before the Court is the matter of claim construction. The Court recommends that the District Court adopt the constructions as set forth below.

## I. BACKGROUND AND STANDARD OF REVIEW

The Court hereby incorporates by reference the summary of the factual and procedural background of this matter set out in its August 15, 2018 Report and Recommendation ("August 15 R&R"). (D.I. 74 at 1-3) It additionally incorporates by reference the legal principles regarding claim construction set out in the August 15 R&R. (*Id.* at 3-5)

## II. DISCUSSION

The parties had disputes regarding eight terms or sets of terms (hereafter, "terms"). The August 15 R&R addressed the first four terms. The instant Report and Recommendation addresses terms five and six. The final two terms will be addressed in a forthcoming Report and Recommendation.

### A. "storing a[n] [videogame] image in[to] the [left/first] [back]buffer; determining [if/when] the [videogame] image is [in] a two-dimensional [format/image] or a three-dimensional [format/image]"

Claims 1, 8 and 16 of the '096 patent recite the steps "storing a[n] [videogame] image in[to] the [left/first] [back]buffer; determining [if/when] the [videogame] image is [in] a two-dimensional [format/image] or a three-dimensional [format/image.]" The recitation of these steps is representative in claim 1, and for ease of reference the Court again reproduces that claim below, with these steps emphasized:

> 1. A method of displaying images in a videogame system that supports two-dimensional and three-dimensional display of the images, said method comprising the computer implemented steps of:
> clearing left and right backbuffers in the videogame system;
> *storing an image into the left backbuffer;*
> *determining if the image is in a two-dimensional format or a three-dimensional format,* wherein when the image is in a three-dimensional format, calculating the coordinates of a second view position of the image and storing a second view position image into the right backbuffer;
> displaying the image stored in the left backbuffer onto one or more displays when the image is in a two-dimensional format; and
> simultaneously displaying the images stored in the left and right backbuffers onto the one or more displays to create a three dimensional perspective of the image to a user when the image is in a three-dimensional format.

('096 patent, col. 13:39-58 (emphasis added))

The parties' sole dispute with respect to this claim term is whether these two steps (the "storing" step and the "determining" step) must be performed in the order in which they appear in the claim (i.e., that the storing step must be performed before the determining step). (D.I. 52 at 6; D.I. 53 at 6; Tr. at 75) Plaintiff asserts that they do not need to be performed in this order; Defendants argue that they do. (D.I. 52 at 6; D.I. 53 at 6)

2

Federal Circuit caselaw states that "unless the steps of a method claim actually recite an order, the steps are not ordinarily construed to require one." *Mformation Techs., Inc., v. Research In Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014) (internal quotation marks, citation and brackets omitted); *see also Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003). In determining whether steps "actually recite an order," a two-part test is used. *Altiris, Inc.*, 318 F.3d at 1369 (citing *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323 (Fed Cir. 2001)). First, a court looks to the claim language to determine whether, as a matter of logic or grammar, the steps must be performed in the order written. *Mformation Techs., Inc.*, 764 F.3d at 1398-99; *Altiris, Inc.*, 318 F.3d at 1369. If not, then the court examines the rest of the specification, in order to assess whether *it* directly or implicitly requires such a construction. *Mformation Techs., Inc.*, 764 F.3d at 1398-99; *Altiris, Inc.*, 318 F.3d at 1370. If it does not, then the sequence in which such steps are written is not a requirement. *Altiris, Inc.*, 318 F.3d at 1370.

With respect to step one of this test, Plaintiff contends that there is no matter of logic or grammar that requires the storing step to be performed prior to the determining step. (D.I. 52 at 7)[1] Specifically, Plaintiff argues that the claim does not use language such as "first," "then," or "after," which would explicitly require such an order. (Tr. at 77) Plaintiff also points to a

---

[1] Plaintiff also argues, without any citation to the patent specification, that if the storing and determining steps were to be switched (such that the determining step came first), this would be advantageous in that it would "save a significant amount of processing time" because "[s]ubstantial processing time is inherently lost if the processor has to run a separate determining step after each storage step for each image." (D.I. 52 at 7) However, as Defendants note, (D.I. 57 at 6-7), Plaintiff's assertion amounts to nothing more than attorney argument, since the Court has been presented with nothing in the intrinsic or extrinsic record to support it, *see Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 614 F. App'x 503, 511 (Fed. Cir. 2015) ("[A]ttorney arguments are not relevant intrinsic or extrinsic evidence[.]").

limitation in claim 1 that surely does make clear that an order is required—"displaying the image stored in the left backbuffer . . . [.]" (D.I. 59 at 9) Obviously, the way this "displaying" step is written (i.e., that "the image [already] stored" is the thing to be displayed), it cannot occur until after the storing step has taken place. Thus, Plaintiff argues, when the patentee wanted to recite a specific order, it knew how to do so.

In the Court's view, the matter is in fact settled at step one, but not in Plaintiff's favor. (D.I. 53 at 7 (Defendants arguing that "there is no need to proceed beyond the first step because the grammar and logic of the claims clearly require that the steps be performed in the order recited")) Most significant to the Court's decision here is the importance of certain language in the determining step. After claim 1 recites "storing *an image* into the left backbuffer," the next listed step is "determining if *the image* is in a two-dimensional format or a three-dimensional format[.]" ('096 patent, col. 13:45-47 (emphasis added))[2] What image is it that the videogame system is making this determination about? The answer, grammatically and logically seems obvious: it is the "image" that has previously been stored (the only "image" that is referred to in the body of the claim before the "determining" step is set out).[3] (D.I. 53 at 7; D.I. 57 at 6; Tr. at 83, 85, 87); *see Wi-Lan, Inc v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) ("Subsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim."); *SCVNGR, Inc. v. DailyGobble, Inc.*, CASE NO. 6:15-CV-493-JRG-KNM, 2017 WL

---

[2] Substantially similar language also appears in claims 8 and 16. ('096 patent, cols. 14:17-18, 15:17-19)

[3] The fact that the storing step refers to "*an* image" also seems significant. The use of the word "an" suggests that this is purposefully the first time that the image is referred to in the body of the claim. Thus when that image is referred to again in the determining step, it is referred to as "*the* image"—the one previously stored.

4

4270200, at *10 (E.D. Tex. Sept. 26, 2017) ("Step (b) recites 'transmitting . . . the code' generated in step (a), so step (a) must be performed before step (b).") (emphasis omitted).

In addition to the strength of this "antecedent basis" argument, the Court notes that the structure of the remaining claim limitations also suggests that the storing and determining steps (and indeed, certain other steps) must occur in their listed order. The first limitation in claim 1 requires the "clearing [of the] left and right backbuffers in the videogame system." ('096 patent, col. 13:43-44) And then the storing step is listed, stating that the method requires "storing an image into the left backbuffer." (*Id.*, col. 13:45) It makes both grammatical and logical sense that the method would *first* require clearing the left backbuffer so that the backbuffer is *then* ready for an image to be stored in it. Next, the limitation immediately after the storing and determining steps is the displaying step. Above, the Court has already explained why that limitation must follow the storing step; it must also come after the determining step, because the displaying step requires that the system know whether the image to be displayed is two-dimensional, and that analysis happens in the determining step. As for the last claim limitation—the "simultaneously displaying" limitation—it requires that images already stored in the left and right backbuffers must be displayed simultaneously. (*Id.*, col. 13:54-57) And so it stands to reason that this step has to come after the storing and determining steps set out before it in the claim, since, *inter alia*, those two limitations are the ones that describe how images are stored in the left and right backbuffers in the first place.[4]

For these reasons, the Court will construe the "storing" and "determining" steps to require that the steps must occur in the order recited in the claims.

---

[4] Again, though claims 8 and 16 use somewhat different language, they too suggest a required order for their steps. ('096 patent, cols. 14:12-32, 15:12-16:9)

5

## B. "videogame"

The claim term "videogame" appears in claims 1, 5, 8, 12, and 16 of the '096 patent, and claims 1, 2, 7, and 8 of the '218 patent.[5] The parties' current competing proposed constructions for the term are set out in the chart below:

| Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| videogame | a software program written in some computer language, with its objective to simulate a non-existent world and take a player or user into [this] world | a software program written in some computer language with its objective to simulate a non-existent world and take a player or user into this world, which has a process which starts by providing a plurality of independently related logical states which include a set of programming options, where each programming option corresponds to different image characteristics |

(June 18 email)

Plaintiff's proposed construction is derived from the definition set out in the "Background of the Invention" portion of the specification. (D.I. 53 at 3) There, the specification explains that "[a]ny videogame is a software program written in some computer language. Its objective is to simulate a non-existent world and take a player or user into this world." ('096 patent, col. 3:53-55; '218 patent, col. 3:53-55) Meanwhile, Defendants' proposed construction incorporates this language, but also includes additional language found in the "Detailed Description of the Invention" section of the specification, which notes that:

---

[5] The term "videogame" appears in the patent claims not only as part of the phrase "videogame system," (*see, e.g.*, '096 patent, col. 13:39), but also as a standalone term (i.e., "the videogame"), (*id.*, col. 14:3).

6

> Videogames are processes which start by providing a plurality of independently related logical states which include a set of programming options, where each programming option corresponds to different image characteristics.

('096 patent, col. 5:64-67; '218 patent, col. 5:64-67) The dispute here is whether the final construction should include this additional language. The Court finds that it should.

It is of course true that "[w]hen a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009). Yet Plaintiff argues that while its proposed construction contains language the patentee used to define "videogame," Defendants' additional language is not an example of the patentee acting as his own lexicographer. More specifically, Plaintiff claims that the disputed language offered by Defendants misrepresents the term in question by describing not what a videogame *is*, but instead *how* a videogame is generally *designed*. (D.I. 52 at 3-4; D.I. 59 at 15)

The Court disagrees with Plaintiff's logic.[6] There are certainly many ways in which the patentee could have chosen to describe what a "videogame" *is*. He might have done so in part (as both parties here agree that he did) by defining a videogame in terms of its objective. But he also could have defined it (in part) by reference to its design (i.e., by reference to how it "start[s]" or the type of "programming options" that it contains). Indeed, both Plaintiff's construction (the part that comes from the "Background of the Invention" section) and the disputed portion of Defendants' construction (the part that is found in the "Detailed Description

---

[6] Plaintiff also confusingly argues that the disputed portion of Defendants' proposed construction is both "too broad" and yet also contains "far more detail than necessary[.]" (D.I. 59 at 15-16) If a proposed construction is simultaneously derided as being too broad and too narrow, perhaps that is a sign that it is just right.

7

of the Invention" section) are preceded by phraseology typically indicating that a definition is to follow (i.e., "[a]ny videogame is . . ." and "[v]ideogames are . . .").[7] *See* (Tr. at 98); *see also Sinorgchem Co. v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) ("[T]he word 'is,' . . . a term used here in the specification, may signify that a patentee is serving as his own lexicographer.") (internal quotation marks and citation omitted); *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, Case No. 12-cv-04967-WHO, 2014 WL 1007449, at *4 (N.D. Cal. Mar. 12, 2014) (finding that when the patent used the phrase "convolutional codes are . . ." that was a sign that the patentee was "acting as his own lexicographer") (internal quotation marks and brackets omitted).

In the end, in construing this claim term, it does not make sense to omit definitional language found in the part of the patent that describes, in detail, the disclosed invention. For the reasons set forth above, the Court recommends that "videogame" be construed to mean "a software program written in some computer language with its objective to simulate a non-existent world and take a player or user into this world, which has a process which starts by providing a plurality of independently related logical states which include a set of programming options, where each programming option corresponds to different image characteristics."

## III. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court adopt the

---

[7] If anything, as Defendants argue, (D.I. 53 at 3; D.I. 57 at 4; Tr. at 99-100), the disputed portion of their proposed construction might be seen as the more reliable indicator of what the term "videogame" means in relation to the inventions described in the claims. That is because it is found in a section purporting to provide a detailed description *of the invention*, while the entirety of Plaintiff's proposed construction comes from a portion of the patent discussing only *background* of or relating to the invention. *Cf. Verizon Servs. Corp. v. Vonage Holding Corp.*, 503 F.3d 1295, 1304 (Fed. Cir. 2007).

8

following constructions:

1. The steps of "storing a[n] [videogame] image in[to] the [left/first] [back]buffer; determining [if/when] the [videogame] image is [in] a two-dimensional [format/image] or a three-dimensional [format/image]" shall be limited to that order

2. "videogame" should be construed to mean "a software program written in some computer language with its objective to simulate a non-existent world and take a player or user into this world, which has a process which starts by providing a plurality of independently related logical states which include a set of programming options, where each programming option corresponds to different image characteristics"

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: August 30, 2018

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

9