**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TECHNO VIEW IP, INC., )
)
      Plaintiff, )
)
      v. )     Civil Action No. 17-386-CFC-CJB
)
FACEBOOK TECHNOLOGIES, LLC and )
FACEBOOK, INC., )
)
      Defendants. )

## REPORT AND RECOMMENDATION

In this action filed by Plaintiff Techno View IP, Inc. ("Plaintiff") against Facebook

Technologies, LLC and Facebook, Inc. (collectively, "Defendants"), Plaintiff alleges

infringement of United States Patent Nos. 7,666,096 (the "'096 patent") and 8,206,218 (the "'218

patent"). Presently before the Court is the matter of claim construction. The Court recommends

that the remaining claim construction-related dispute be resolved in the manner set forth below.

## I.    BACKGROUND AND STANDARD OF REVIEW

The Court hereby incorporates by reference the summary of the factual and procedural

background of this matter set out in its August 15, 2018 Report and Recommendation ("August

15 R&R"). (D.I. 74 at 1-3) It additionally incorporates by reference the legal principles

regarding claim construction set out in the August 15 R&R. (*Id.* at 3-5)

## II.    DISCUSSION

The parties had disputes regarding eight terms or sets of terms (hereafter, "terms"). The

Court has issued Report and Recommendations addressing all eight terms. (D.I. 74, 76, 85)

However, with respect to the eighth set of terms (the "with a processor" terms found in claims 1

and 7 of the '218 patent), the Court required supplemental briefing from the parties before it

could come to a final decision regarding the relevant claim construction disputes. (D.I. 85 at 19-

20)[1] Those disputes are: (1) whether Section 112, paragraph 6[2] applies to the "with a processor" terms, which are both found in method claims; and (2) in making that determination, whether means-plus-function analysis or step-plus-function analysis applies. The parties have submitted their supplemental letter briefs, which provided some helpful guidance with respect to this difficult issue. (D.I. 86, 87) Defendants' position is that although the "with a processor" terms are found in method claims, they nevertheless recite a physical (apparatus) component—the processor—that implicates means-plus-function analysis; when this analysis is properly performed, Defendants assert, Section 112, paragraph 6 applies to the claims. (D.I. 86; *see also* D.I. 53 at 16) Plaintiff, for its part, asserts that step-plus-function analysis applies and that because the "with a processor" claims recite both a step for performing a particular function and an act in support thereof, the claims ultimately do not invoke Section 112, paragraph 6. (D.I. 87; *see also* D.I. 59 at 19-20)

The Court will first examine relevant caselaw and will then turn to application of the caselaw to the "with a processor" terms.

A.     **Caselaw on the Applicability of Section 112, Paragraph 6 as to: (1) Method Claims and (2) "Processor" Terms**

---

[1]     The Court hereby incorporates by reference its discussion of the "with a processor" terms set out in its October 18, 2018 Report and Recommendation ("October 18 R&R"). (D.I. 85 at 10-20)

[2]     Section 112, paragraph 6 provided as follows:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6.

2

The Court will first examine the caselaw regarding the applicability of means-plus-function analysis to method claims, and then will look to cases analyzing whether the term "processor" invoked Section 112, paragraph 6. Each line of cases is helpful to understanding how to assess the "with a processor" terms here.

### 1. Caselaw Regarding the Applicability of Means-Plus-Function Analysis to Method Claims

With regard to the applicability of means-plus-function analysis to method claims, the caselaw from the United States Court of Appeals for the Federal Circuit is a bit unclear. On the one hand, as discussed in the October 18 R&R, there are some Federal Circuit decisions that suggest that if a party argues that a part of *any* method claim implicates Section 112, paragraph 6, then step-plus-function analysis applies. *See, e.g., O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1582-83 (Fed. Cir. 1997) ("address[ing] the application of section 112, ¶ 6, *generally to method claims*" and explaining that the statute's reference to "'steps'" refers to the "generic description of elements of a process, and the term 'acts' [] refer[s] to the implementation of such steps") (emphasis added). Indeed, in *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002), the Federal Circuit stated, "*[f]or a method claim*, § 112, paragraph 6 is implicated only when steps plus function without acts are present." 279 F.3d at 1028 (emphasis added). These cases do not seem to acknowledge that means-plus-function analysis could apply to certain limitations in method claims. *Cf. Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, Case No. 2:15-CV-1202-WCB, 2016 WL 6138124, at *4-5 & n.5 (E.D. Tex. Oct. 21, 2016) (Bryson, J., sitting by designation) (discussing *O.I. Corp.* and *Epcon Gas*).

Yet on the other hand, there are a few cases from the Federal Circuit that have clearly applied means-plus-function analysis to elements found in method claims. (*See* D.I. 86 at 1-2)

3

For example, in *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331 (Fed. Cir. 2006), the Federal Circuit affirmed the district court's application of means-plus-function analysis to a limitation in a method claim. 442 F.3d at 1336, 1340-41 (in a claim reciting a "method of high speed manufacture of a single copy of a book," the limitation "providing means for a customer to visually review said sales information" was correctly deemed to be in means-plus-function form). Likewise, in *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360 (Fed. Cir. 2001), the Court indicated that a method claim contained a "means-plus-function limitation" that was "nearly identical" to the limitation found in apparatus claims reciting "'gripping means for engaging the inner and outer surfaces of said helmet above the bottom edge, the gripping means including a fulcrum located below the bottom edge.'" 269 F.3d at 1364 n.1, 1367.

Notably, both of the limitations at issue in *On Demand* and *J & M Corp.* expressly recited the term "means." And so it is more understandable why, in such circumstances, a court might have thought to apply a means-plus-function analysis there. As the Federal Circuit explained in *O.I. Corp.*, "[t]he word 'means' clearly refers to the generic description of an apparatus element, and the implementation of such a concept is obviously by structure or material." 115 F.3d at 1582; *see also Semcon Tech, LLC v. Micron Tech., Inc.*, Civil Action No. 12-532-RGA, 2014 WL 4447017, at *6 (D. Del. Sept. 9, 2014) (rejecting the defendant's argument that a limitation in a method claim invoked means-plus-function analysis and explaining that *On Demand* and *J & M Corp.* were "distinguishable" in that the terms at issue in those cases contained the phrase "'means'" which generated "a presumption in favor of [] application" of means-plus-function analysis in those cases); *Network Appliance Inc. v. Sun Microsys. Inc.*, No. C-07-06053 EDI, 2008 WL 4193049, at *17 (N.D. Cal. Sept. 10, 2008) (explaining that "*O.I. Corporation* does not

hold that the use of 'means' in a method claim falls outside of § 112 ¶ 6" and that "the Federal Circuit has construed 'means' terms in method claims as means-plus-function limitations").

In yet another case before the Federal Circuit, *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366 (Fed. Cir. 2015), the Court applied means-plus-function analysis to elements in every asserted claim, including method claims; these claims did not expressly recite the term "means" or "means for" but instead contained the term "compliance mechanism." 800 F.3d at 1368-69, 1370-71. The *Media Rights* Court discussed in detail a representative method claim that was "illustrative of the invention"; the claim recited a "method of preventing unauthorized recording of electronic media" via, *inter alia*, "[a]ctivating a compliance mechanism[.]" *Id.* at 1368-69. It was undisputed there that the term "compliance mechanism" had "no commonly understood meaning and is not generally viewed by one skilled in the art to connote a particular structure." *Id.* at 1372; *see also id.* at 1373 ("We have never found that the term 'mechanism'—without more—connotes an identifiable structure; certainly, merely adding the modifier 'compliance' to that term would not do so either."). And the Federal Circuit ultimately affirmed the district court's application of means-plus-function analysis to the term "compliance mechanism," as well as the district court's finding that the term was a means-plus-function limitation. *Id.* at 1373-74.

Beyond these Federal Circuit decisions, at the district court level, courts have at times suggested that means-plus-function analysis could be applicable to a limitation in a method claim.

For example, in *Alacritech, Inc. v. Century Link Commc'ns LLC*, 271 F. Supp. 3d 850 (E.D. Tex. 2017), the Court explained that method claims could include structural limitations that either: (1) "require the steps of the method to be performed in, by, or on a *specific* structure"

5

or (2) do not "meaningfully alter the scope of the claims." 271 F. Supp. 3d at 886-87 (emphasis added). The *Alacritech* Court cited to *Cox Commc'ns, Inc. v. Sprint Commc'n Co.*, 838 F.3d 1224, 1229-30 (Fed. Cir. 2016) as a case involving an example of the latter scenario, where the Federal Circuit explained that the structural limitation "processing system" played no discernible role in defining the scope of the method claims where "the point of novelty resides with the steps of the[] methods, not with the machine that performs them." 271 F. Supp. 3d at 887 (citing 838 F.3d at 1229-30). The former scenario was at play in *Alacritech*, where the Court concluded that the "mechanism" terms recited in the method claims played a "meaningful role in defining claim scope." *Id.* at 886-87. Although the "mechanism" terms at issue did not include "means" language, the Court found that the terms were governed by Section 112, paragraph 6 and that means-plus-function analysis should apply; this was because the term "mechanism" was being used "equivalently to 'means,' a nonce word indicating structure for performing a function but that does not indicate a definite structure." *Id.* at 887-88.

In *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, Case No. 2:15-CV-1202-WCB, 2016 WL 6138124, (E.D. Tex. Oct. 21, 2016) (Bryson, J., sitting by designation), Judge Bryson held that means-plus-function analysis was not applicable to the method claims at issue (directed to a method of treatment of prophylaxis of a person affected with benign prostatic hyperplasia ("BPH")), though such claims did also recite a structural element (a PDE V inhibitor). 2016 WL 6138124, at *1, *5. In rejecting the defendant's argument that means-plus-function analysis should apply to that structural element, Judge Bryson explained that the patent's invention was not PDE V inhibitors themselves—those were well-known by the time of the invention—but instead was "the invention of a *treatment* [for BPH] using compounds that have that effect." *Id.* at *5-6 (emphasis added). He noted that "the flaw that led to the enactment of Section 112,

6

paragraph 6" was the use of "'conveniently functional language *at the exact point of novelty*[,]'"
and concluded that the use of the term "an inhibitor of phosphodiesterase (PDE) V" failed to
convert the claims into ones for which Section 112, paragraph 6 was meant to apply. *Id.* at 6
(quoting *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27 (1997)
(emphasis added)). Thus, it is possible to read this decision as allowing for application of
means-plus-function analysis to a structural element in a method claim only *if* that element
amounts to the "point of novelty" in the invention.

A case from this Court, *Semcon Tech, LLC v. Micron Tech., Inc.*, Civil Action No. 12-
532-RGA, 2014 WL 4447017 (D. Del. Sept. 9, 2014), also seems to acknowledge that means-
plus-function analysis could apply to a structural element in a method claim—if that element
amounted to the advance over prior art. In *Semcon*, the Court found that the "processor" terms in
the method claims of the patent were not properly construed under means-plus-function analysis.
2014 WL 447017, at *5. The *Semcon* Court observed that courts "have been particularly
reluctant to construe terms in method claims as means-plus-function limitations, absent the
drafter's use of the word 'means' in the claim language." *Id.* at *6. Further, the Court noted that
it is not remarkable that method claims would disclose a device that is used in the performance
of the method without detailing the device's structure, since the invention claimed is a *method*.
*Id.* To that end, the Court explained that the inventive concept embodied in the asserted patent
"is the ability to dynamically adjust control parameters using real time information during the
polishing of a semiconductor wafer" and "[t]he particular processor used to evaluate these
various pieces of information is not central to the invention, and the fact that it was not described
in detail is neither surprising nor fatal to the [asserted] patent claims' validity." *Id.*

Thus, these Federal Circuit and district court cases, read together, suggest that if a party

asserts that a method claim element including a structural limitation invokes Section 112, paragraph 6, step-plus-function analysis applies, unless: (1) the claim element recites "means" (or a similar term); and/or (2) the structural limitation clearly constitutes the point of novelty in the invention or meaningfully alters claim scope. In those latter scenarios, the cases suggest that means-plus-function analysis would apply.

### 2. District Court Cases Involving Claims With a "Processor" for Performing a Function

Out of an abundance of caution, the Court will also consider here a line of district court cases examining whether claim limitations reciting a "processor" for performing a function invoke Section 112, paragraph 6.[3]

At the outset, the Court notes that the vast majority of these cases assess system claims, not method claims. In the main, this line of cases looks at whether the claims describe how the processor performs the function and whether the specification sets out structural information about the processor. And for the most part, courts have ultimately concluded that "processor" terms failed to invoke Section 112, paragraph 6. It has been observed that "in many instances, the term 'processor' itself connotes sufficient structure and is not a 'nonce' or 'functional' word that is subject to the limitations of" Section 112, paragraph 6. *St. Isidore Research, LLC v. Comerica Inc.*, Case No. 2:15-cv-1390-JRG-RSP, 2016 WL 4988246, at *14 (E.D. Tex. Sept.

---

[3]    The Federal Circuit has not yet had occasion to address the extent to which the use of the term "processor" invokes application of Section 112, paragraph 6, though that issue is presently on appeal to the Federal Circuit. *See* Brief of Appellant at 22, 29-35, *Konami Gaming Inc. v. High 5 Games, LLC*, No. 2018-1723, (D.I. 22) (Fed. Cir. June 28, 2018); Reply Brief of Appellant at 8-11, *Konami Gaming Inc. v. High 5 Games, LLC*, No. 2018-1723, (D.I. 39) (Fed. Cir. Sept. 20, 2018) (arguing that the district court: (1) ignored differences between apparatus, method and computer readable medium claims in applying Section 112, paragraph 6; and (2) improperly deemed "processor" to be a nonce word).

19, 2016); *see also Odyssey Wireless, Inc. v. Apple Inc.*, CASE NOS. 15-CV-1735-H (RBB), 2016 WL 3055900, at *12 (S.D. Cal. Mar. 30, 2016) ("Indeed, several district courts post-[*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015)] have concluded that the term 'processor' sufficiently connotes a definite structure to a person of ordinary skill in the art, and, therefore, found [Section 112, paragraph 6] did not apply to a claim or claims that used the term 'processor.'") (citing cases).[4]

The Court first looks to two cases involving method claims that recited a "processor." In *Quanergy Sys., Inc. v. Velodyne Lidar, Inc.*, Case No. 15-cv-05251-EJD, 2017 WL 4410174 (N.D. Cal. Oct. 4, 2017), the Court concluded that disputed phrases including the language "processor being configured to . . ." found in both system and method claims were not means-plus-function terms invoking Section 112, paragraph 6. 2017 WL 4410174, at *16-17, 19. The Court noted that the plain language of the claims "describes how the processor interacts with other components" and the specification provided structural information regarding the processor. *Id.* at *19. In light of this, the Court held that "the 'processor' is not simply a black box

---

[4]      In some of the cases cited in this subsection, courts utilized means-plus-function analysis. Recall that when applying means-plus-function analysis, a court first looks to see if the term "means" or "means for" is used in the claim limitation. If the claim limitation does not use the term "means" or "means for" there is a rebuttable presumption that Section 112, paragraph 6 does not apply. *Williamson*, 792 F.3d at 1348. The presumption can be overcome if "the claim term fails to recite[] sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (internal quotation marks and citation omitted). The Federal Circuit has explained that in undertaking this analysis, the court must "ask if the claim language, read in light of the specification, recites sufficiently definite structure to avoid" Section 112, paragraph 6. *Media Rights*, 800 F.3d at 1371-72 (internal quotation marks and citation omitted). The party challenging the presumption "bears the burden of overcoming the presumption that Section 112, [paragraph] 6 does not apply by a preponderance of the evidence." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson*, 792 F.3d at 1349.

recitation of structure for providing the same specified function as if the term 'means' had been used." *Id.* Likewise, in *Semcon Tech*, which, as described above, involved method claims, this Court determined that the processor terms found therein did not invoke Section 112, paragraph 6. This was because the claim language indicated that the processor was a component of the finishing control subsystem, and the specification "details the location of the processor within the invention, the type of processor suitable for carrying out the invention's requirements, and the desired capabilities possessed by a preferred processor." 2014 WL 4447017, at *5-6.

As for cases involving only apparatus claims that recited processors configured to perform particular functions, those cases seem to reference the same Section 112, paragraph 6-related guideposts. As a starting point, some courts have recognized that generally, while "processor" may not define a specific structure, it does at least describe a class of known structures, unlike terms such as "means," "device," or "element." *Syncpoint Imaging, LLC v. Nintendo of Am. Inc.*, Case No. 2:15-cv-00247-JRG-RSP, 2016 WL 55118, at *19 (E.D. Tex. Jan. 5, 2016); *see also, e.g., Odyssey Wireless*, 2016 WL 3055900, at *11; *FitnessAge Servs., Inc. v. Polar Electro, Inc.*, No. 2:11-cv-01444-MMD-GWF, 2014 WL 551335, at *5 (D. Nev. Feb. 10, 2014) ("The Court agrees with Plaintiff that in the common parlance of software engineering the term 'processor' sufficiently designates the structure for determining the overall fitness age.").[5] Additionally, these courts look to whether the claim describes how the processor performs the function, and whether a person of ordinary skill in the art could understand how the

---

[5]     This would seem to distinguish a case like *Media Rights*, where the term at issue ("compliance mechanism") did not have a commonly understood meaning and was not considered to connote any particular structure by one skilled in the art. *Media Rights*, 800 F.3d at 1372.

processor interacts with other components of the claims. For example, in *3G Licensing, S.A. v. Blackberry Ltd.*, C.A. No. 17-82-LPS-CJB, 2018 WL 4375091 (D. Del. Sept. 13, 2018), the Court found that the claim limitation "processor further being configured to, in response to the indication, initiate a second call to the remote videophone, the second call not supporting the second media" did not invoke Section 112, paragraph 6 where the claim provided an input-output structure for the processor and the specification described the processor's interaction with other components and how it initiates the second call. 2018 WL 4375091, at *7 (internal quotation marks and emphasis omitted); *see also, e.g.*, *Odyssey Wireless*, 2016 WL 3055900, at *11; *Syncpoint Imaging*, 2016 WL 55118, at *17-20; *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, C.A. No. 09-80-LPS, C.A. No. 11-742-LPS, 2015 WL 7737308, at *8 (D. Del. Dec. 1, 2015).[6]

---

[6]       Some courts that have found "processor" terms to fall outside of Section 112, paragraph 6's ambit have explained that a court should not apply a *per se* rule to the effect that when a claim discloses a "processor" alone, it does not connote sufficient structure to avoid invoking Section 112, paragraph 6, or that a disclosure of a "processor" in such claims necessarily requires an algorithm to give the processor structure. (Some cases, *see Personal Audio, LLC v. Apple, Inc.*, CIVIL ACTION No. 9:09CV111, 2011 WL 11757163, at *21-22 & n.13 (E.D. Tex. Jan. 31, 2011), relying on *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008)), had apparently employed such rules.). *See, e.g.*, *Syncpoint Imaging*, 2016 WL 55118, at *18; *FitnessAge Servs.*, 2014 WL 551335, at *5. These courts note that the *Aristocrat* rule (i.e., that if a patentee utilizes computer-implemented means-plus-function claiming, the corresponding structure in the specification for the function must be an algorithm unless a general purpose computer is sufficient for performing the function) applies only after Section 112, paragraph 6 *has been* invoked; it does not apply when determining whether the statute *should be* invoked. *See Cellular Commc'ns Equipment LLC v. HTC Corp.*, CASE NO. 6:16-CV-475-KNM, 2018 WL 316472, at *8 (E.D. Tex. Jan. 8, 2018); *Syncpoint Imaging*, 2016 WL 55118, at *18; *FitnessAge Servs.*, 2014 WL 551335, at *5; *see also Apple Inc.*, 757 F.3d at 1298 ("Hence, where a claim is not drafted in means-plus-function format, the reasoning in the *Aristocrat* line of cases does not automatically apply, and an algorithm is therefore not necessarily required."). In other words, the standard used to prove sufficient structure to avoid implication of Section 112, paragraph 6 is not the same standard as that used to identify corresponding structure in the specification to support a means-plus-function claim

In contrast, in cases where system or apparatus claims including the term "processor" were found to invoke Section 112, paragraph 6, courts have explained that the claimed "processor" failed to convey to the person of skill in the art "anything about the internal components, structure, or specific operation of the processor." *See, e.g.*, *GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 212676, at *56-57 (D. Ariz. Jan. 19, 2016) (finding that a "processor" limitation found in system claims invoked application of Section 112, paragraph 6, where the claims recited a processor for associating two sets of data to generate a third set of data but did not provide additional information regarding how that was accomplished).[7] For example, in *Velocity Patent LLC v. Mercedes-Benz USA, LLC*, Case Nos. 13-cv-8413, 13-cv-8419, 13-cv-8418, 2016 WL 5234110 (N.D. Ill. Sept. 21, 2016), the Court found that limitations in apparatus claims that recited a "processor subsystem" for determining whether to activate a notification circuit required additional programming of the processor that the claim did not provide, thus invoking Section 112, paragraph 6. 2016 WL 5234110, at *6; *see also, e.g.*, *Velocity Patent LLC v. FCA US LLC*, 2018 WL 4214161, at *8 & n.16 (N.D. Ill. Sept. 4, 2018) (explaining that in cases with "processor" limitations where Section 112, paragraph 6 was not implicated, "the claim term describes how the processor performs the function" whereas, in contrast, the claim term at issue did not describe the input and how the input affected the output, and nor did the specification).[8]

---

limitation. *See Wi-Lan USA, Inc. v. Alcatel-Lucent USA, Inc.*, No. 12-23568-CIV, 2013 WL 4811233, at *40-41 (S.D. Fla. Sept. 9, 2013).

[7]    The *GoDaddy* Court did not appear to look at the specification in reaching this conclusion. *See* 2016 WL 212676, at *56.

[8]    Likewise, in *Konami Gaming, Inc. v. High 5 Games, LLC*, Case No. 2:14-cv-01483-RFB-NJK, 2018 WL 1020120 (D. Nev. Feb. 22, 2018), the Court found that apparatus

**B.     Application to the "With a Processor" Terms**

The Court now turns to the "with a processor" terms. For the following reasons, it

concludes that Defendants have not demonstrated that the terms invoke Section 112, paragraph

6, no matter which method of analysis the Court uses to come to that conclusion.

As an initial matter, assume that a step-plus-function analysis is the proper analysis that

should be applied to the terms (as Plaintiff asserts). In that event, the Court agrees with Plaintiff

that Section 112, paragraph 6 would not apply. The claims do not include the phrase "steps for,"

and thus there is no presumption that the claim limitations are in step-plus-function format. (D.I.

87 at 2; *see also* D.I. 85 at 17) And the claim limitations recite function (e.g., "calculating . . .

second [position] [spatial] coordinates of a second eye view of the [] object [] in three

dimensional space") as well as acts in support of the function (e.g., "using the calculated first

position coordinates of the first eye view [and the position of the virtual object in the

videogame]"). (D.I. 87 at 2; *see also* D.I. 85 at 16)[9] Therefore, under step-plus-function

analysis, Section 112, paragraph 6 is not implicated with respect to these claims.

---

and method claims reciting processor limitations invoked Section 112, paragraph 6 where the
specifications and asserted claims of the patents in-suit failed to disclose an algorithm, and the
evidence did not establish the existence of off-the-shelf processors that could perform the
disclosed functions. 2018 WL 1020120, at *13-14. The Court did so without expressly
addressing Konami's argument that its method claims must be distinguished from apparatus
claims in light of the guidance from *O.I. Corp. Id.* at *11.

[9]     As the Court noted in the October 18 R&R, "[i]dentifying an act to see [whether
Section 112, paragraph 6] applies [] is an inherently less searching inquiry than analyzing the
same act under . . . enablement, written description and definiteness[.]" (D.I. 85 at 15 n.5
(quoting *Neurografix v. Regents of Univ. of Cal.*, No. 2:11-cv-07591-MRP-RZ, 2012 WL
8281409, at *6 (C.D. Cal. June 13, 2012))); *see also Neurografix*, 2012 WL 8281409, at *6
(finding that the limitation "processing said outputs to generate data representative of the
diffusion anisotropy of the selected structure" did not implicate Section 112, paragraph 6 and
explaining that "[t]he central question is not how processing accomplishes the generating

Alternatively, assume that if method claims recite a structural element that amounts to the point of novelty or meaningfully impacts the scope of the claims, then the method claims *can* invoke means-plus-function analysis. Even if that were the right rule, the record before the Court, at least as it stands now, does not indicate that the claims at issue are of this sort.

During the *Markman* hearing, Defendants' counsel did begin her presentation regarding the "with a processor" terms by asserting that the processor elements *do* meaningfully impact claim scope. Counsel asserted that during prosecution, the original claims simply cited "calculating second position coordinates . . ." without mention of "with a processor of the videogame system." (D.I. 73 (hereinafter, "Tr.") at 122) According to Defendants' counsel, the Examiner rejected the claims under 35 U.S.C. § 101 for "simply being a mathematical step[,]" and in response, the patentee added the phrase "with a processor of the videogame system." (*Id.*; *see also id.* at 124 (explaining that to overcome the Section 101 rejection, the patentees asserted that the claims were not just about "math" or "calculating[,]" but now included "a processor which calculates based on these numbers")) From there, Defendants' counsel asserted that just adding in the recitation of a "processor" is not enough, and that it must be a "specially programmed processor" that uses an algorithm. (*Id.* at 124-26)

But Defendants did not include this line of argument in their briefing, and so there are no citations to the record that support this position. For now, then, this is simply attorney argument, and the Court cannot conclude—based on attorney argument alone—that the particular processor claimed in the method claims at issue meaningfully alters claim scope (such that the processor terms might be subject to means-plus-function analysis).

---

function, but how generating is accomplished" and "[t]he existence of any answer to the latter, recited in the claim language, suffices to hold that [Section 112, paragraph] 6 does not apply")).

Lastly, assume that it is proper to apply means-plus-function analysis to these processor terms without even considering whether the processor amounts to the point of novelty in the claims or meaningfully alters claim scope. Even if the Court took that path, it would not be persuaded that Defendants have met their burden to show that Section 112, paragraph 6 applies.

Here, the Court starts from the premise that there is a presumption that Section 112, paragraph 6 does *not* apply, because the term "means" is not found in the claims at issue. *Williamson*, 792 F.3d at 1347-49. In order to determine whether this presumption is overcome, the Court must examine "whether the words of the claim are understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure." *Id.* at 1348. While there is no expert testimony on the record regarding this particular issue, based on the record that is before the Court, Defendants have not overcome this presumption.

The claims seem to provide an input-output structure for the processor. For claim 1 of the '218 patent, the calculated first position coordinates of the first eye view are input to generate the calculated second position coordinates. ('218 patent, col. 13:52-55); *see also, e.g.*, *Masimo Corp.*, 2015 WL 7737308, at *7-8 (finding that a limitation reciting "a processor configured to perform a method comprising . . . selecting one of the plurality of possible oxygen saturation values as an oxygen saturation measurement based upon an analysis to determine which of the plurality of possible oxygen saturation values corresponds to the oxygen saturation of the pulsing blood" connoted sufficient structure to avoid means-plus-function treatment as the claim "provides an input-output structure for the processor"). For claim 7, the second spatial coordinates of a second eye view of the virtual object are calculated by the processor using coordinate transformation equations (that, in turn, use the calculated first position coordinates). ('218 patent, col. 14:26-31)

15

Further, the specification provides additional detail regarding the structure of the claimed processor. *See, e.g., Media Rights*, 800 F.3d at 1372 ("In [analyzing whether the presumption against the application of Section 112, paragraph 6 has been overcome], we ask if the claim language, read in light of the specification, recites sufficiently definite structure to avoid §112, ¶ 6.") (internal quotation marks and citation omitted); *Blast Motion, Inc. v. Zepp Labs, Inc.*, Case No.: 15-CV-700 JLS (NLS), 2017 WL 476428, at *15 (S.D. Cal. Feb. 6, 2017) (same). The specification appears to indicate that any general purpose processor can be used to perform the calculations. ('218 patent, col. 7:8-10; D.I. 47, ex. A at 23; Tr. at 119) And the specification explains that the SETXYZTDV function uses "the usual coordinate transform equations" in calculating coordinates. ('218 patent, col. 11:45-47; *see also* D.I. 52 at 13 n.21; *id.* at 20); *see also, e.g., FitnessAge Servs.*, 2014 WL 551335, at *5-6 (finding that limitation reciting "said processor from said inputted data determining an overall corresponding fitness age for the individual" did not invoke means-plus-function analysis where the claim provided the structure for performing the function and the specification also provided an example of a formula for calculating the overall fitness age); *cf. Blast Motion*, 2017 WL 476428, at *15 (finding adequate structure in the specification to sustain the presumption that means-plus-function claiming does not apply to the term "initial motion recognition module" where the specification identified the module and described its structure and the process for carrying out an initial motion recognition). There is no expert testimony of record that the Court is aware of suggesting that a person of ordinary skill would not know how the processor gets from the input to the output using such "usual coordinate transform equations."

In sum, then, on this record, under any of the methods of analysis that might be applied to these claims, the Court is not persuaded that the "with a processor" limitations invoke Section 112, paragraph 6.

Beyond the issue of whether the "with a processor" claims implicate Section 112, paragraph 6, the Court is not aware of any further claim construction dispute. Therefore, the Court declines to recommend a construction for these terms.

## III.    CONCLUSION

For the foregoing reasons, the Court recommends that no construction is necessary for the "with a processor" terms.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  December 7, 2018

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE